UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**EDWARD VIECELLI and ANDREA VIECELLI,**

        **Plaintiffs,**

**v.**                              **Case No: 6:15-cv-682-Orl-41KRS**

**SEACOAST NATIONAL BANK,**

        **Defendant.**

## ORDER

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment (Doc. 65). As set forth below, the motion will be granted.

### I.    BACKGROUND

All of Plaintiffs' remaining claims arise out of allegations that Defendant incorrectly attempted to collect a debt that was discharged in bankruptcy and improperly furnished information regarding that debt to credit reporting agencies. In 2003, Plaintiffs executed a Note in favor of Big Lake National Bank—Defendant's predecessor-in-interest. (Picart Decl., Doc. 65-19, ¶ 7). The Note was secured by a mortgage on real property located in Labelle, Florida (the "Labelle debt"). (*Id.* ¶ 8). In 2004, Plaintiffs filed a Chapter 13 bankruptcy petition. (A. Viecelli Decl., Doc. 70-1, ¶ 3; E. Viecelli Decl., Doc. 70-3, ¶¶ 12–13). At the time of filing, Plaintiffs were current on their payments on the Labelle debt. (*See* Doc. 65-19 ¶ 9).

Plaintiffs' Amended Chapter 13 Plan, which was approved by the bankruptcy court, provided that Plaintiffs would pay the Trustee $724.67 per month, which the Trustee would distribute pro rata to Plaintiffs' unsecured creditors. (Am. Ch. 13 Plan, Doc. 65-2, at 1–2). Also in

the Plan was a line item titled "Secured – Paid Directly by Debtor Outside Plan"; under that heading was a listing for "Big Lake National Bank/First Mortgage" with an "[e]stimated [p]ayment" of $692.00 per month. (*Id.* at 1). Further, the "Plan Summary" listed "[s]ecured" debts in the Plan as "[n]one." (*Id.* at 2). In confirming the Plan, the bankrtupcy court noted: "There are no secured creditors paid by the Trustee through the Plan as confirmed." (Order Confirming Plan, Doc. 65-3, at 2). In 2006, Plaintiffs completed the Plan, and the bankruptcy court entered an order granting Plaintiffs "a discharge under" 11 U.S.C. § 1328(a). (Discharge Order, Doc. 65-17, at 1). The Discharge Order did not specify which debts were discharged. (*See id.*). But under the heading "Explanation of Bankruptcy Discharge in a Chapter 13 Case," the Order noted that "a debtor may voluntarily pay any debt that has been discharged." (*Id.* at 2).

Following the discharge, Plaintiffs continued to occupy the Labelle property and pay the monthly payments until October 2011. (*See* Doc. 65-19 ¶ 9). At that time, due to Mr. Viecelli's health, Plaintiffs' stopped remitting payments to Defendant and relocated. (Doc. 70-3 ¶¶ 15, 17). Prior to doing so, Plaintiffs attempted to effectuate a short sale. (Doc. 65-19 ¶ 10). In communications regarding the short sale, Defendant indicated that if Plaintiffs rejected the short sale settlement offer and did not "make payments on [their] balance owed" to Defendant, it would "pursue a deficiency judgment for the balance owed." (Aug. 16, 2011 Lynch E-mail, Doc. 65-5, at 1).

Eventually, the short sale proved to be untenable, (Doc. 65-19 ¶ 11), and Defendant foreclosed on the property, (*id.* ¶ 12). Prior to the foreclosure, Plaintiffs sought assurance from Defendant that their personal debt on the Labelle property had been discharged in bankruptcy and that Defendant would not attempt to collect from Plaintiffs any deficiency that existed after the foreclosure of the property. (Doc. 70-1 ¶¶ 4–7; Doc. 70-3 ¶¶ 15–17). According to Plaintiffs,

Defendant's representative, Trina Sessoms, confirmed that Plaintiffs' personal liability on the Note had been discharged, and therefore Plaintiffs believed that Defendant would not attempt to collect any deficiency. (*See* Doc. 70-1 ¶¶ 4–7).

Plaintiffs also received two letters from Defendant, indicating that Defendant believed Plaintiffs' personal liability on the Labelle debt had been discharged and that Defendant would not pursue a deficiency judgment. (Oct. 19, 2011 Letter, Doc. 70-7, at 2; Nov. 3, 2011 Letter, Doc. 70-8, at 1). Despite these representations, Defendant engaged a law firm to contact Plaintiffs and to attempt to collect the Labelle debt. (Picart Dep., Doc. 70-5, at 141:8–11). That law firm sent Plaintiffs a letter referencing Plaintiffs' foreclosure proceeding, noting that there was a deficiency balance owed to Defendant after the foreclosure, and seeking to "discuss payment of this account." (June 24, 2014 Letter, Doc. 4-1, at 3–4). Defendant also reported the deficiency to the credit reporting agencies. (*See* Credit Bureau Summary, Doc. 65-15 (reporting that Plaintiffs' last payment was on September 6, 2011, with updated past-due amounts reported approximately every thirty days)). In response, Plaintiffs filed multiple disputes with the credit agencies, which then sought verification from Defendant. (Doc. 65-19 ¶¶ 18–20). Defendant reviewed Plaintiffs' account and reported that the information was accurate. (*Id.* ¶ 21–25).

Eventually, after exhausting all other pathways, Plaintiffs filed suit, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72. At this stage of the litigation, the only remaining claims are for negligent and willful violations of the FCRA for failing to conduct a reasonable investigation with respect to disputed information (Counts I and II) and for violations of the FCCPA for

attempting to collect a debt that Defendant knew was not legitimate (Count V). Defendant has moved for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251–52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## I. ANALYSIS

The overarching issue in this case is whether Plaintiffs' personal liability for the Labelle debt was discharged in bankruptcy. As an alternative, Plaintiffs argue that, even if the debt was

not discharged, Defendant waived its right to collect the debt. Because the Court determines that the Labelle debt was not discharged and that, even if Defendant waived its right to collect the debt, it did not violate the FCRA or the FCCPA, summary judgment will be granted in favor of Defendant on all remaining claims.

### A. Discharge

Chapter 13 of the Bankruptcy Code is "wholly voluntary," *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015), and "permits individual debtors to develop a plan to repay all or a portion of their debts over a period of time specified in the plan," *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 264 (2010). "The plan must provide, *inter alia*, for the submission of a portion of the debtor's future earnings and income to the control of a trustee and for supervised payments to creditors over a period not exceeding five years." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 327 (1993). A Chapter 13 plan can modify the rights of most creditors, but it can also "leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). "A proposed bankruptcy plan becomes effective upon confirmation, and will result in a discharge of the debts listed in the plan if the debtor completes the payments the plan requires." *Espinosa*, 559 U.S. at 264 (citing 11 U.S.C. §§ 1324, 1325, 1328(a)). Specifically, the language of the statute states, in relevant part, that "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title." 11 U.S.C. § 1328(a). At issue here is whether the Labelle debt was "provided for" by Plaintiffs' Chapter 13 plan and, if not, whether the debt was disallowed under § 502.[1]

---

[1] The Court appreciates the additional briefing by both parties on the issue of whether discharging a principal residence mortgage violates the anti-modification provision of § 1322(b)(2) and whether § 1322(b)(5) is applicable. While the Court ultimately declines to address those issues, counsels' capable legal arguments assisted the Court in understanding the overall framework of the provisions of the Bankruptcy Code at issue and come to a fully-informed decision.

Courts disagree whether stating that a debt is to be paid directly by the debtors outside the plan without modification constitutes "providing for" that debt. *See Dukes v. Suncoast Credit Union (In re Dukes)*, No: 2:15-cv-420-FtM-99, 2016 WL 5390948 (M.D. Fla. Sept. 27, 2016) (explaining the "[t]wo schools of thought" regarding the definition of "provided for" and discussing the case law in depth). In *Rake v. Wade* the Supreme Court examined the term "provided for," noting "[a]s used in § 1328(a) [the discharge provision at issue here], that phrase is commonly understood to mean that a plan 'makes a provision' for, 'deals with,' or even 'refers to' a claim." 508 U.S. 464, 474 (1993). In so noting, the *Rake* court cited Collier on Bankruptcy, which in turn cites a Ninth Circuit case, *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1122 (9th Cir. 1983). *See* 8 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 1328.02(3)(a) (16th ed. 2015) (noting that the definition of "provided for" set forth in *Gregory* was adopted in *Rake*). The issue in *Gregory* was whether a Chapter 13 plan that proposed a "zero payment on unsecured claims" "provided for" those claims. *Id.* at 1119. In determining that the plan did provide for the claims, the Ninth Circuit rejected the creditor's definition of "provided for" as "supplied a benefit." *Id.* at 1122. In its reasoning, the Ninth Circuit indicated that "provided for" was broader than the creditor's definition, and it relied on the bankruptcy appellate panel's definition, noting that "the plan must 'make a provision for'" a debt, further defining "make a provision for" as "deal with it or refer to it." *Id.* Ultimately, the *Gregory* court concluded that a plan that lists debts but specifies that the payment on those debts will be zero "provides for" the debts. The court further noted that the plan itself stated "this plan *provides for* [emphasis added] –0– payment to unsecured creditors requesting that said debts be discharged." *Id.* (emphasis and alteration in original).

In *Rake*, the issue was whether several Chapter 13 plans "provided for" principal residence mortgages when they proposed to cure defaults on those debts.[2] The *Rake* court summarily disposed of the "provided for" issue, noting that the "plans clearly 'provided for' respondent's home mortgage claims by establishing repayment schedules for the satisfaction of the arrearages portion of those claims." *Rake*, 508 U.S. at 473.

Here, however, the plan does not modify payments of the Labelle debt,[3] it does not cure any arrearages, and it does not establish a repayment schedule. Instead, the Plan merely noted that Plaintiffs would continue to pay the mortgage on the Labelle property pursuant to the terms of their contract. Further, the express language of the Plan documentation indicates that the Labelle debt will be paid *outside* the plan. And the Plan Summary indicates that there are no secured debts included in the Plan. While none of these facts, on their own, are conclusive of whether the Labelle debt was "provided for" by the Plan, when viewed together, it is clear that the Labelle debt was not "provided for," and therefore, not discharged. *See Bank of Am. N.A. v. Dominguez*, No. 1:12-cv-24074-RSR, Doc. 25 at 7–12 (S.D. Fla. Sept. 23, 2013) (discussing a factually similar scenario, distinguishing *Rake*, noting that the payments on the debt at issue were "governed not by the chapter 13 plan, but rather by the original mortgage documents," and explaining that it would be unreasonable to conclude that a debt was "provided for" by the plan because the plan referred to the claim where the only reference stated that the debt was not included in the plan and would be paid outside the plan).

---

[2] The issue in *Rake* involved the assessment of taxes, rather than whether the debt was discharged; the principal residence mortgage there was excepted from discharge under § 1328(a)(1).

[3] The Court acknowledges that the Plan could not have modified the payments on the Labelle debt because it was secured only by Plaintiffs' principal residence. 11 U.S.C. § 1322(b)(2).

The Court also agrees with Defendant that Plaintiffs' Chapter 13 plan left the secured class of claims, including the Labelle debt, "unaffected." *See* 11 U.S.C. § 1322(b)(2) (noting that a Chapter 13 plan can "leave unaffected the rights of holders of any class of claims."). In other words, those debts were permitted to pass through the bankruptcy proceedings without any change. *See* Merriam-Webster's Collegiate Dictionary 1360 (11th ed. 2003) (defining "unaffected" as "not influenced or changed"). While there is no binding authority regarding whether leaving a debt unaffected, in and of itself, prevents the debt from being discharged, in this case, it supports the fact that the Labelle debt was not provided for by the Plan.

Further, the fact that the Labelle debt was not provided for and left wholly unaffected undermines Plaintiffs' argument that the debt was disallowed under § 502 because Defendant's predecessor failed to file a proof of claim. It is unreasonable to conclude that a creditor whose debt was left wholly unaffected by a Chapter 13 plan would be required to file a proof of claim. *See Universal Am. Mortg. Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 827 (11th Cir. 2003) (stating that "a proof of claim . . . should be filed only when some purpose would be served" and noting that a creditor should file a proof of claim if it "wants to ensure it will be provided for in the confirmed plan" (quotation omitted)).

Thus, the Court concludes that the Labelle debt was not provided for by the Plan nor was it disallowed under § 502, and therefore, the debt was not discharged.

**A.     Waiver**

Plaintiffs argue that, even if the Labelle debt was not discharged, Defendant has waived its right to collect on the account by sending Plaintiffs letters stating that Defendant would not seek

to collect a deficiency from Plaintiffs.[4] Defendant responds that it did not waive any right, that the anti-waiver provision of the Note and Mortgage applies to bar such waiver, and that even if it did waive its right to collect, Plaintiffs still cannot establish liability under the FCRA and the FCCPA.

"Waiver is the intentional relinquishment of a known right." *Costello v. Curtis Bldg. P'ship*, 864 So. 2d 1241, 1244 (Fla. 5th DCA 2004). "To establish waiver under Florida law, a party must prove that: (1) there was the existence of a right at the time of the waiver; (2) there was actual or constructive knowledge of the right; and (3) there was an intention to relinquish the right." *Chick-Fil-A, Inc. v. CFT Dev., LLC*, 652 F. Supp. 2d 1252, 1261 (M.D. Fla. 2009), *aff'd*, 370 F. App'x 55 (11th Cir. 2010). Plaintiffs argue that Defendant clearly waived its right to collect the Labelle debt in its October 19, 2011 correspondence relating to the proposed short sale and its notice of default on November 3, 2011. The October 19, 2011 Letter provides:

> Deficiency Terms: With respect to the potential deficiency between the current amount owed on the loan and the net proceeds of this sale- our records indicate that we did not received a signed reaffirmation agreement in response to the personal bankruptcy that was filed in 2004. As such, it is our understanding that as of this date, we (the lender) are not able to pursue the borrowers for any deficiency as stated above, assuming that the bankruptcy case has not/will not be dismissed in the future.

(Doc. 70-7 at 2). The November 3, 2011 Letter provides:

> This is not an attempt to collect a debt discharged in bankruptcy. You are receiving this notice as a courtesy since it was your intent in the papers filed in your bankruptcy case to retain possession of

---

[4] Although Plaintiffs indicate in a footnote that Defendant's actions "may also give rise to a claim that [Defendant] is promissorily estopped from thereafter claiming the Account was due and owing," (Pls' Resp., Doc. 70 at 14 n.5), Plaintiffs do not elaborate on this argument. The Court will not develop Plaintiffs' arguments for them, and it will not address an argument that "has [been] summarily raised . . . in a footnote." *Bodywell Nutrition, LLC v. Fortress Sys., LLC*, 846 F. Supp. 2d 1317, 1325 (S.D. Fla. 2012); *see also Brady v. Medtronic, Inc.*, No. 13-cv-62199-RNS, 2014 WL 1377830, at *8 n.1 (S.D. Fla. Apr. 8, 2014) ("A footnote is the wrong place for substantive arguments on the merits of a motion." (quotation omitted)).

> the property and pay the mortgage secured by the property. Please disregard this letter if it is your intent to surrender the property. . . .
>
> . . .
>
> In the event judicial foreclosure proceedings become necessary, you will not be sued on the note nor will we pursue a deficiency judgment against you since the underlying debt was discharged in bankruptcy.

(Doc. 70-8 at 1 (emphasis omitted)).

Based on the language of these letters, and assuming they are sufficient to establish waiver, Defendant, at most, waived its right to pursue the deficiency or sue on the Note. Nothing in the letters indicate that Defendant was forgiving or extinguishing any part of the Labelle debt. In this situation, Defendant's waiver is analogous to the running of a statute of limitations. *See Henry v. Halifax Hosp. Dist.*, 368 So. 2d 432, 433 (Fla. 1st DCA 1979) ("The law is clear that the expiration of the period of time prescribed by a statute of limitations does not extinguish the debt itself but only precludes the bringing of legal action to collect that debt."). Therefore, reporting that the Labelle debt was past-due, even if Defendant no longer had the ability to pursue the deficiency, was not inaccurate and does not violate the FCRA.[5] *See Herrell v. Chase Bank USA, N.A.*, No. 16-C-551, 2016 WL 7010505, at *4 (E.D. Wis. Oct. 24, 2016) ("[C]ases from other jurisdictions uniformly hold that where a debt exists, notwithstanding limitations on the creditor's ability to collect, the creditor may lawfully furnish accurate information about the account to the [credit reporting agencies]."); *Saylor v. Pinnacle Credit Servs., LLC*, 118 F. Supp. 3d 881, 886 (E.D. Va.

---

[5] Courts "have widely diverged in their interpretations of what constitutes an 'accurate' credit report." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1157 (11th Cir. 1991). Some require only technically accurate facts, while others consider information to be inaccurate if it is "factually correct information that could also be interpreted as being misleading or incomplete." *Id.* The distinction is irrelevant here, however, as the information furnished by Defendant is not actionable under even the more lenient standard.

2015) ("[The plaintiff argues [that the defendant] violated the [FCRA] by reporting an account on which the applicable five year statute of limitations had run. This claim is without merit as a matter of law. . . . [T]he running of the statute of limitations merely bars the creditor's remedy but does not extinguish the debt." (quotation and citation omitted)), *aff'd*, 667 F. App'x 829 (4th Cir. 2016); *Budhi v. BAC Home Loans Servicing, L.P.*, 1:11-CV-2785-TWT-AJB, 2012 WL 1677253, at *5–6 (N.D. Ga. Apr. 16, 2012), *report and recommendation adopted*, 2012 WL 1677247 (N.D. Ga. May 11, 2012) (same).

This analysis applies equally to Plaintiffs' FCCPA claim. Plaintiffs allege that Defendant violated the FCCPA by attempting to collect a debt that it knew was not legitimate. *See* Fla. Stat. § 559.72(9). As noted, even if Defendant waived its right to pursue a deficiency or sue on the Note, the debt was still legitimate. Therefore, Defendant is not liable for attempting to collect a debt it knew was illegitimate.

### III.  CONCLUSION

In sum, the Labelle debt was not discharged. Further, even if Defendant waived its right to pursue a deficiency, such a waiver did not extinguish the debt. Therefore, Defendant did not violate the FCRA by reporting the debt as delinquent, nor did Defendant attempt to collect a debt it knew was not legitimate under the FCRA. Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 65) is **GRANTED**.
2. Defendant's Motion to Strike (Doc. 64), Plaintiffs' Motion to Strike (Doc. 68), and Plaintiffs' Motion in Limine (Doc. 78) are **DENIED as moot**.
3. The Trial Status Conference set for April 27, 2017, is **CANCELLED**.

4. The Clerk is directed to enter a judgment, in favor of Defendant and against Plaintiffs, providing that Plaintiffs shall take nothing on any of their claims against Defendant. Thereafter, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida on April 21, 2017.



Copies furnished to:

Counsel of Record